



FILED

AUG 04 2025 JXM

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

KELSEY MAURINE BRICKL,

Plaintiff,

v.

AMERICAN AIRLINES, INC.,

Defendant.

1:25-cv-09158
Judge Manish S. Shah
Magistrate Judge Gabriel A. Fuentes
RANDOM/CAT. 2

Case No.

COMPLAINT FOR DISABILITY DISCRIMINATION UNDER SECTION 504 OF THE

REHABILITATION ACT

AND THE MONTREAL CONVENTION

---

1. **Jurisdiction and Venue**

This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), as this action arises under the laws and treaties of the United States, including Section 504 of the Rehabilitation Act (29 U.S.C. § 794) and the Convention for the Unification of Certain Rules for International Carriage by Air ("Montreal Convention").

Venue is proper in this District under 28 U.S.C. § 1391(b), as Plaintiff resides in Chicago, Illinois, and the effects of Defendant's discriminatory conduct were felt within this District.

## 2. Parties

Plaintiff Kelsey Maurine Brickl is a U.S. citizen and resident of Illinois. She is a qualified individual with disabilities as defined by 29 U.S.C. § 705(20), living with severe mobility, cardiac, and neuromuscular impairments and is a full-time custom prescription power wheelchair user.

Defendant American Airlines, Inc. is a domestic air carrier that receives federal financial assistance through the U.S. Department of Transportation and is therefore subject to the nondiscrimination provisions of Section 504 of the Rehabilitation Act.

## 3. Factual Allegations

On June 12, 2025, Plaintiff attempted to travel on American Airlines Flight AA151 from Paris Charles de Gaulle Airport (CDG) to Chicago O'Hare International Airport (ORD). The evening before the flight, on June 11, 2025, while in Paris, Plaintiff attempted to complete online check-in, a critical accessibility accommodation for herself and her dependent minor autistic son.

Plaintiff was categorically denied access to online check-in due to internal coordination failures between American Airlines and its codeshare partner British Airways, upon which Plaintiff had flown from Chicago to London before traveling to Paris. These failures included inconsistent naming conventions and misgendering across ticketing records (e.g., labeling her son as "Miss Elliot Brickl" and her husband as "Mstr Michael Brickl"). These discrepancies, entirely outside

Plaintiff's control, triggered a system lockout that barred her from online check-in and forced her family to conduct same-day airport check-in, including additional stressors such as increased physical and physiological burden and fatigue, time compression and disruption of medical routines, and risk to pre-arranged disability accommodations.

Defendant's complete refusal to aid Plaintiff with online check-in the night before the flight comprised an unlawful deprivation of a federally protected accessibility accommodation. For individuals with disabilities and their dependents with complex medical or neurodevelopmental needs, such as Plaintiff and her autistic son, advance online check-in is not a discretionary convenience but an essential and protected right under federal law. The failure to ensure accessible pre-departure check-in violated 14 C.F.R. §§ 382.43 and 382.45, which require that reservation and check-in systems be accessible to individuals with disabilities.

During multiple live customer service chats with American Airlines representatives on the evening of June 11, Plaintiff was met with a pattern of evasion and misinformation. Agents attempted to deflect responsibility by blaming "issues with the website working overseas sometimes," expressed confusion over the mislabeled ticket data, and falsely claimed that Plaintiff was not entitled to pre-departure check-in as a disabled passenger or to request timely assistance from a Complaint Resolution Official (CRO). When Plaintiff asserted her legal rights, American Airlines agents abruptly terminated the chats and refused further assistance.

In an additional statutory violation, when Plaintiff attempted to escalate the matter and request intervention from a CRO, she was not connected with any such official. Instead, she was given a telephone number to call, which led to a remote voicemail inbox, an explicit violation of 14

C.F.R. § 382.151, which requires immediate access to a CRO for passengers facing disability-related barriers.

The totality of these failures by American Airlines while Plaintiff was in France — spanning administrative mismanagement, technological inaccessibility, and willful misinformation — constitute unlawful discrimination on the basis of disability under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. These same failures also represent a direct breach of the Defendant's duties under the Montreal Convention, creating the conditions that led to a delay in carriage and forming part of the overall "accident" that caused the Plaintiff subsequent bodily injury.

Upon arrival at Chicago O'Hare International Airport (ORD), Plaintiff, who is a full-time user of a custom prescription power wheelchair, was left stranded aboard the aircraft for nearly one hour after her medically necessary mobility device, which had been explicitly tagged for return to the jet bridge, was instead diverted to baggage claim.

This diversion directly violated 14 C.F.R. § 382.129, which requires that mobility devices be returned to passengers at the aircraft door unless doing so is impossible, an exception not applicable in this instance. No justification grounded in safety, equipment limitations, or logistical necessity was presented.

American Airlines staff initially cited the wheelchair's weight as an excuse for treating it as luggage and only reversed course after Plaintiff invoked her federally protected rights and firmly refused to disembark without her essential device. During this delay, the Plaintiff was forced to spend the time educating the flight attendants on her rights under the Air Carrier Access Act (ACAA). The flight attendants appeared completely unaware of these legal requirements, with

one crew member incorrectly stating that "most airlines" divert personal wheelchairs to baggage claim — a practice that is both illegal and contrary to the Plaintiff's extensive travel experience.

At no time during this delay was a Complaint Resolution Official (CRO) offered, nor was any medical assistance provided to the Plaintiff. Plaintiff's 11-year-old autistic son witnessed the incident, resulting in significant emotional distress that further exacerbated Plaintiff's own symptoms, including neurological worsening and cardiovascular instability.

When Plaintiff's husband, an eyewitness to the events, attempted to advocate for the immediate return of the wheelchair at the jet bridge, he was met with overt hostility and dismissiveness by ground personnel, further evidencing a pervasive institutional resistance within American Airlines to accommodate disabled passengers and their lawful rights.

The Defendant's actions caused the Plaintiff substantial and foreseeable harm, including physical pain, humiliation, emotional trauma, and a documented medical decompensation in the weeks following the flight. Despite being put on immediate notice of these violations through the Plaintiff's contemporaneous social media posts and direct messages, Defendant failed to acknowledge its wrongdoing or implement any corrective measures.

Instead, the Defendant's sole attempt at resolution was to issue a grossly inadequate and insulting seventy-five dollar ($75.00) Trip Credit. Plaintiff accepted this token gesture not as a settlement of her legal claims — for which no written release was ever signed — but solely as a goodwill acknowledgment of the airline's culpability, a fact she made known numerous times to American Airlines personnel.

Following the Plaintiff's formal complaint to the U.S. Department of Transportation, the Defendant issued an official response on July 18, 2025. This letter contained a self-incriminating admission wherein the Defendant quoted the federal regulation requiring immediate access to a Complaint Resolution Official (CRO) while simultaneously describing its own non-compliant actions. The letter also declared a corporate policy of refusing to engage in Alternative Dispute Resolution (ADR) to resolve passenger disputes.

Rather than addressing the matter in good faith, the Defendant then retained external legal counsel located in Chicago to aggressively defend its unlawful conduct on this case. Counsel for the Defendant issued a formal letter on July 28, 2025, that contained further dispositive admissions and bad-faith arguments. The letter confessed that it is "not uncommon" for the airline to unlawfully divert heavy wheelchairs to baggage claim, confirming a systemic disregard for federal law.

Furthermore, despite being repeatedly informed of the Plaintiff's non-ambulatory status, the letter falsely characterized the Plaintiff's lack of safe alternatives by stating she had "chose[n] to wait on the aircraft". This deliberate attempt to shift legal blame onto the disabled passenger is a malicious legal fiction, directly refuted by objective medical evidence establishing that the Plaintiff's only safe option was to remain on board. This pattern of evasion, victim-blaming, and bad-faith legal maneuvering has caused further emotional distress and exemplifies the Defendant's ongoing and deliberate indifference to the rights of passengers with disabilities.

**4. CAUSES OF ACTION**

**COUNT I – VIOLATION OF SECTION 504 OF THE REHABILITATION ACT**

Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

Defendant American Airlines, Inc. is a recipient of federal financial assistance and is therefore subject to the nondiscrimination provisions of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

Plaintiff is a qualified individual with disabilities, as defined by 29 U.S.C. § 705(20).

By reason of her disability, Plaintiff was excluded from participation in, denied the benefits of, and subjected to discrimination in the services, programs, and activities of Defendant, in violation of Section 504.

Defendant's discriminatory conduct included, but was not limited to, denial of access to federally mandated online check-in, refusal to provide timely access to a CRO, improper handling of medically necessary mobility equipment, and a failure to implement or enforce policies and training sufficient to accommodate passengers with disabilities. These actions constituted direct violations of the duties imposed upon Defendant by the Air Carrier Access Act and its implementing regulations, and serve as dispositive evidence of the disability-based discrimination prohibited by Section 504 of the Rehabilitation Act.

Defendant's actions and omissions constitute a broader pattern of deliberate indifference to the rights of passengers with disabilities. This indifference is evidenced not only by the multiple violations during Plaintiff's travel, but also by the Defendant's subsequent bad-faith conduct,

including its issuance of insulting token compensation, its self-incriminating admissions in its official DOT response, and its counsel's attempts to blame the disabled passenger for the harm caused.

**COUNT II – VIOLATIONS OF THE MONTREAL CONVENTION**

Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

The international flight from Paris, France, to Chicago, Illinois, on June 12, 2025, constitutes "international carriage" as defined by the Montreal Convention, to which both the United States and France are signatories.

Pursuant to Article 19 of the Montreal Convention, the Defendant is liable for damages occasioned by delay in the carriage of passengers. The Defendant's actions, which left the Plaintiff stranded on the aircraft and unable to disembark for nearly one hour, constitute such a delay and caused the Plaintiff to suffer damages.

Pursuant to Article 17 of the Montreal Convention, the Defendant is liable for damages sustained in case of bodily injury of a passenger caused by an "accident" taking place on board the aircraft or in the course of embarking or disembarking. The Defendant's unlawful diversion of the Plaintiff's medically necessary wheelchair, refusal to return it to the aircraft door, and the creation of a hostile and unsafe environment constituted an "accident." This accident caused the Plaintiff to suffer bodily injury, including physical and emotional distress, cardiovascular instability, and severe medical decompensation, which was foreseeably and significantly exacerbated by the acute distress she experienced while being forced to witness both the

emotional harm inflicted upon her disabled minor son and the overt hostility directed at her husband by the Defendant's personnel.

**5. Relief Requested**

WHEREFORE, Plaintiff, appearing pro se, respectfully requests that this Court:

a. Declare that Defendant's conduct violated Section 504 of the Rehabilitation Act and the Montreal Convention;

b. Award compensatory damages to Plaintiff for physical injury, emotional distress, humiliation, and related harms resulting from Defendant's discriminatory actions, pursuant to 29 U.S.C. § 794a and the Montreal Convention;

c. Grant injunctive relief requiring Defendant to revise and implement comprehensive and verifiable policies, procedures, and staff training protocols to ensure lawful and nondiscriminatory treatment of passengers with disabilities, including, at a minimum:

    i. Ensuring the timely, priority return of all medically necessary mobility devices to the passenger at the aircraft door and ceasing the unlawful practice of diverting such devices to baggage claim;

    ii. Implementing a system that guarantees immediate, live access to a trained Complaint Resolution Official (CRO) at all times for passengers with disability-related issues; and

    iii. Auditing and remediating its web-based reservation and check-in systems to ensure full accessibility and prevent system lockouts due to passenger data discrepancies;

d. Award reasonable litigation costs and attorneys' fees pursuant to 29 U.S.C. § 794a, should Plaintiff later retain counsel or request appointment of legal representation;

e. Order such other relief as the Court deems just, equitable, and appropriate under the circumstances; and

f. Mandate the implementation of a third-party compliance monitoring program for a minimum period of eighteen (18) months to ensure Defendant's sustained adherence to federal disability access requirements and to prevent recurrence of the discriminatory practices described herein.

## 6. Demand for Jury Trial

Plaintiff Kelsey Maurine Brickl, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, hereby demands a trial by jury on all issues so triable in this action.

Respectfully submitted,

/s/ Kelsey M Brickl

Kelsey Maurine Brickl

401 E Ontario St, Apt 4206

Chicago, IL 60611

kelseybrickl@gmail.com

(312) 858-0386

*Pro Se Plaintiff*